2023 IL App (1st) 220946-U

FIFTH DIVISION
March 31, 2023

No. 1-22-0946

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THOMAS LUDWIG, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2016 L 065068 |
| | ) | |
| B&R CORPORATION OF AMERICA, INC., LASALLE | ) | |
| BANK AND SUCCESSORS TO TRUST #130330 | ) | |
| BANK OF AMERICA AND CHICAGO TITLE, STATE | ) | |
| BANK OF COUNTRYSIDE TRUST # 99-2020, and | ) | |
| TIMOTHY HAWKEN, | ) | Honorable |
| | ) | Kathleen Marie Burke, |
|     Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    ***Held***: In this premises liability case in which the plaintiff was injured on property advertised for sale, we hold that a "For Sale" sign was insufficient to render the plaintiff an invitee. The plaintiff's status was that of a trespasser, and the only duty of care owed to him was to refrain from willful and wanton conduct. Accordingly, the circuit court did not err in granting summary judgment to the landowners.

¶ 2     Plaintiff Thomas Ludwig filed a two-count complaint for negligence against the defendants after he was injured on property belonging to them. Ludwig claimed that both defendants owed him a duty of care and breached their duty in multiple ways. Both defendants moved for summary judgment, and the circuit court granted both motions. Ludwig appeals the circuit court's order granting summary judgment. We affirm.

¶ 3                                    BACKGROUND

¶ 4     On August 31, 2014, Thomas Ludwig and two of his friends rode their motorcycles onto property owned by B&R Corporation of America, Inc., and LaSalle Bank, and Successors to Trust #130330 Bank of America and Chicago Title (collectively "B&R"). Ludwig sustained substantial injuries when he and his motorcycle fell from a cliff on the border of the B&R property and the adjoining property owned by State Bank of Countryside Trust #99-2020 and Timothy Hawken (collectively "Countryside"). Ludwig's injuries required an elbow replacement, and he incurred medical bills of $99,220.20. Ludwig also claimed lost wages of $16,000.

¶ 5     At the time of Ludwig's accident, the B&R property was listed for sale for $5.5 million. It is undisputed that a large "For Sale" sign was posted at the entrance to the property. Ludwig's yearly income was only about $45,000. Nonetheless, Ludwig claims that he was a potential buyer of the property, and that he entered the property for the purpose of viewing and potentially purchasing it.

¶ 6     On July 10, 2019, Ludwig filed his fourth amended complaint, which is the operative complaint in this appeal. The complaint contained two counts of negligence: the first against B&R and the second against Countryside. Ludwig claimed that B&R owed him a duty of care, and failed to provide notice of the cliff, which, according to him, constituted a "hazardous condition" on the

property. As against Countryside, Ludwig claimed that it performed excavation work on its property, which encroached onto the B&R property and created the cliff.

¶ 7 The matter proceeded to discovery. At his deposition, Ludwig stated that he saw a large plywood "For Sale" sign at the front of the property. However, he denied seeing any signs prohibiting trespass. At her deposition, Terri Alexander, the real estate agent for the property, testified that there were multiple "No Trespassing" signs posted on the property. She also stated that the entrance to the property was secured by a gated fence with a chain and padlock. She testified that when she arrived at the property shortly after the accident, she found the gate locked. According to Alexander, Ludwig never contacted her to inquire about viewing or entering the property.

¶ 8 Following discovery, B&R and Countryside moved for summary judgment. On July 20, 2020, B&R filed its motion for summary judgment, arguing that it is unlawful for a person to drive an off-highway motorcycle on private property absent the owner's verbal or written permission. In addition, B&R cited section 11-1427 of the Illinois Vehicle Code, which provides that "an owner, lessee, or occupant of premises owes no duty of care to keep the premises safe for entry or use by others for use by an all-terrain vehicle or off-highway motorcycle, or to give warning of any condition, use, structure or activity on such premises." 625 ILCS 5/11-1427 (West 1998). B&R also incorporated by reference a substantial portion of Countryside's motion for summary judgment, in which Countryside argued that Ludwig was a trespasser.

¶ 9 On July 21, 2020, Countryside filed its motion for summary judgment arguing that, because Ludwig did not have permission to enter the properties, he was a trespasser, and Countryside therefore owed him no duty of care under the law. Countryside also argued that a duty of

reasonable care does not exist in situations where a danger is open and obvious to a reasonable person.

¶ 10    The circuit court granted the defendants' motions for summary judgment, but did not specify the reasons in reaching its ruling. The circuit court also subsequently denied Ludwig's motion to reconsider following full briefing. This appeal followed.

¶ 11                                    ANALYSIS

¶ 12    On appeal, Ludwig argues that the circuit court erred in granting summary judgment in favor of the defendants because (1) the for-sale sign posted on the B&R property constituted an implied invitation for the public to enter the advertised premises, and (2) even if the sign did not constitute an implied invitation, the defendants owed him a duty of care "due to the unnatural and dangerous condition on the properties."

¶ 13    In addition to the difficulty of parsing Ludwig's arguments and claims of error, we note the numerous deficiencies in his appeal. First, the record on appeal does not include B&R's memorandum in support of its motion for summary judgment, and B&R correctly points out that it is the appellant's duty to present the court with a proper record on appeal. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). Second, Ludwig's "Nature of the case" section of his brief is laden with factual allegations and contains legal arguments, while his "Facts" section includes nothing regarding the procedural history of the case, such as a description of the two counts of the operative complaint, and what materials were submitted in favor of and in opposition to summary judgment. Countryside is correct in pointing out these requirements, as they are mandated by Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Supreme Court rules must be followed; they are not mere suggestions. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). Finally, Countryside points out that Ludwig failed to provide a transcript

of the summary judgment hearings. Regardless, we review the circuit court's judgment, not its reasoning, and may affirm on any basis supported by the record. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003). The appellees' cogent briefs enable us to engage in a meaningful review and render a proper disposition on the merits.

¶ 14    We begin with the applicable standard of review for summary judgment rulings. In his brief, Ludwig fails to address the standard of review at all. Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure. 735 ILCS 5/2-1005 (West 2018). Under section 2-1005(c), summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*; *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. We review appeals from summary judgment rulings *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 15    In his first argument on appeal, Ludwig urges that the posted for-sale sign alone rendered him an invitee rather than a trespasser on B&R's property. In other words, he claims that the sign gave him permission to enter the property, deeming him an invitee.[1]

¶ 16    An invitee is "defined as one who enters the premises of another with the owner or occupier's implied or express consent for the mutual benefit of himself and the owner, or for a purpose connected with the business in which the owner is engaged or permits to be carried on upon the premises." *Rodriguez v. Norfolk and Western Ry. Co.*, 228 Ill. App. 3d 1024, 1038 (citing

---

[1] Although it does not affect our disposition, we must note that the sincerity of Ludwig's claim that he was a "potential buyer" is questionable, as his yearly income was about $45,000, and the property was listed for $5.5 million (and later sold for $4.5 million).

*O'Donnell v. Electro-Motive Division of General Motors Corp.*, 148 Ill. App. 3d 627, 631 (1986).[2]

By contrast, a trespasser is one who "enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Skoczylas v. Ballis*, 191 Ill. App. 1, 4 (1989).

¶ 17    At his deposition, Ludwig admitted that he did not contact anyone to inquire about viewing the B&R property. Ludwig's contention that a for-sale sign can serve in lieu of the express or implied consent from an owner amounts to nothing more than what he thinks premises liability law *should* be. But Ludwig fails to cite to any authority that supports his argument that the posted sign rendered him an invitee. Our research has uncovered no such authority either. Accordingly, we must reject his argument because Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires legal arguments to be supported by "*citation of the authorities* and the pages of the record relied on." (Emphasis added). In addition to Ludwig's failure to cite to authority in support of his claim, B&R cites an appellate court decision from another state that held the opposite of what Ludwig urges us to adopt. A Maryland appellate court case, which dealt with premises liability, rejected the claim that a sale sign posted in front of a house constituted an implied invitation.

¶ 18    In *Wells v. Polland*, 120 Md. App. 699 (1998), the Court of Special Appeals of Maryland considered whether the owners of a listed property were liable to potential purchasers who toured the property and were injured when a staircase collapsed. *Id.* at 705. Said potential purchasers did not attempt to contact the person listed on the "for sale" sign. *Id.* at 706. Rather, just as here, they entered the property without permission or notice. The court reasoned that "[i]t is unreasonable to

---

[2] A "licensee" is another category or status of persons allowed to enter a property. The Premises Liability Act (740 ILCS 130/2 (West 1996)), discussed further *infra*, abolishes the distinction between "invitee" and "licensee." We therefore do not delve into the historical distinctions between the two and use the term "invitee" herein.

suggest that every time an owner or real estate company places a 'sale' sign outside a house, the owner or company is 'inviting' people to come in, and we are hesitant to hold as such." *Id.* at 714. We find the Maryland court's reasoning persuasive and decline to extend liability in these circumstances.

¶ 19 In short, we find no authority that supports Ludwig's claim that the for-sale sign rendered him an invitee on B&R's property, so we must reject that claim. Additionally, there is no question that Ludwig was a trespassing on the Countryside property, as he did not have permission to enter it either. The record indicates that "No Trespassing" signs were posted on both properties. Thus, Ludwig was a trespasser as to both properties, and we will thus analyze his remaining arguments under the standard of care a landowner owes to trespassers.

¶ 20 Section 3 of the Premises Liability Act provides, in pertinent part:

"An owner or occupier of land owes no duty of care to an adult trespasser other than to refrain from willful and wanton conduct that would endanger the safety of a known trespasser on the property from a condition of the property or an activity conducted by the owner or occupier on the property." 740 ILCS 130/3 (West 2018).

¶ 21 "There is no separate and independent tort of willful and wanton conduct." *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010) (citing *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274 (1994)). Rather, "[i]t is regarded as an aggravated form of negligence." *Krywin*, 238 Ill. 2d at 235 (citing *Sparks v. Starks*, 367 Ill. App. 3d 834, 837 (2006)). "In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19 (citing *Krywin*, 238

Ill. 2d at 225). A plaintiff must also allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004).

¶ 22    Under the Act, the landowners here were required only to refrain from willful and wanton conduct. Nothing in the record demonstrates that either defendant here acted willfully and wantonly. More importantly, Ludwig did not allege that either defendant acted willfully and wantonly in any of his complaints. There was no indication in the record that the defendants deliberately intended to harm Ludwig, or that they exhibited a conscious disregard for his welfare. Nonetheless, Ludwig cites several cases in which various plaintiffs succeeded in their claims. We address those in turn.

¶ 23    Ludwig first relies on our decision in *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275 (1994). In that case, we considered whether a landowner's voluntary undertaking to remove snow and ice from its property imposed liability on the landowner if it then failed to remove the snow and ice. *Id.* at 279-80. We concluded that the landowner was liable because of its voluntary undertaking to remove snow and ice from the premises. *Id.* at 280. However, in this case, Ludwig introduced no evidence to suggest that either defendant voluntarily undertook any obligation regarding either property. Accordingly, we do not find that portion of *Ordman* applicable in this case. The *Ordman* court also considered whether the defendant's conduct that resulted in unnatural accumulation of ice would subject it to liability, and answered that question in the affirmative. *Id.* at 283. Here, Ludwig has not alleged that the defendants caused unnatural conditions on either property. Rather, he alleged based solely "on information and belief", that excavation work was performed on the Countryside property that encroached the B&R property. Ludwig did not offer any evidence of excavation work, encroachment, or unnatural conditions resulting therefrom.

Moreover, the plaintiff in *Ordman* was a tenant of the property where he was injured, not a trespasser as Ludwig was. Therefore, we do not find the *Ordman* decision persuasive.

¶ 24 Ludwig next cites *Mahurin v. Lockhart*, 71 Ill. App. 3d 691 (1979), in which a landowner filed suit against his neighbor when a branch from the neighbor's tree fell on him while he was on his own property. *Id.* at 691. *Mahurin* is distinguishable for two reasons. First, the plaintiff there was injured on his own property, and so was obviously not a trespasser. Second, again there is no evidence here that either defendant in this case created the condition that caused Ludwig's injury. A vague unsupported allegation of "excavation work" is insufficient, and certainly does not rise to the level of conscious disregard for Ludwig's welfare required under the applicable standard.

¶ 25 Finally, Ludwig argues that the appellate court's decision in *Dealers Service & Supply Co. v. St. Louis National Stockyards Co.*, 155 Ill. App. 3d 1075 (1987) lends support to his claim. In *Dealers*, a landowner who allowed people to dispose of combustible materials on his property was found liable for a fire that started there and spread to a neighboring landowner's property. *Id.* at 1081. That case did not involve trespass; rather, it involved a situation where a neighbor's negligence caused damage to the adjoining property. Accordingly, we find this case inapplicable.

¶ 26 In sum, we find all of the authorities Ludwig cited to be distinguishable and unpersuasive. Because nothing in the record that supports the contention that defendants here acted in a willful or wanton manner, the circuit court properly granted summary judgment to the defendant landowners.

¶ 27                                    CONCLUSION

¶ 28 Ludwig failed to demonstrate that there was a genuine issue of material fact precluding summary judgment. Accordingly, we affirm the circuit court's order granting the defendants' motions for summary judgment.

¶ 29    Affirmed.