184 P.3d 206

**Vickie HANSEN, Plaintiff–Appellant,**

v.

**CITY OF POCATELLO, Defendant–Respondent.**

No. 34277.

Supreme Court of Idaho,
Pocatello, April 2008 Term.

May 7, 2008.

Gordon Law Firm, Inc., Idaho Falls, for appellant. Brent Gordon argued.

Anderson Nelson Hall Smith, P.A., Idaho Falls, for respondent. Marvin K. Smith argued.

J. JONES, Justice.

Vickie Hansen stepped on an unsecured water meter cover and injured herself while walking along a public sidewalk. She filed a complaint against the City of Pocatello ("City"), alleging her injuries were a result of the City's negligence. The district court granted the City's motion for summary judgment, and Hansen appealed.

**I.**

Vickie Hansen was walking along the sidewalk near 1618 N. Main Street in Pocatello, Idaho, on September 10, 2004, when she stepped on the lid of a water meter box.

The lid flipped up, and she fell into the hole injuring herself. Hansen alleges the lid was unsecured at the time of her fall, and that this failure was the City's fault. The lid would not have flipped up unless it was askew and not properly seated within the frame. A City employee, Brian Johnson, had removed the lid to read the water meter at that location on September 1, 2004, nine days before the accident. His log from that day does not denote any problems with the water meter lid or the bolt securing it. However, the City's Work Order Protocols for water meters do not require meter readers to report missing nuts or locking screws.

Hansen filed suit claiming the City was negligent for failing to secure the bolt on the water meter lid or for leaving it unsecured in some other way.[1] She also relied on the doctrine of *res ipsa loquitur*. The City filed an answer to her complaint and, shortly after, a motion for summary judgment. Hansen's counsel admittedly misread the Idaho Rules of Civil Procedure and failed to file his responsive documents fourteen days before the hearing, as required by Idaho R. Civ. P. 56. The district court denied his request to allow in the documentation. Therefore, the court did not consider Hansen's affidavit about the incident nor her memorandum in opposition to the motion for summary judgment. After considering the motion in the light most favorable to Hansen, the district court granted the City's motion for summary judgment. The court stated the undisputed evidence on the record showed that the City performed its duties with regard to the water meter lid in a reasonable and safe manner, and that the City had no notice of any problem with the lid prior to Hansen's accident. Further, the court held *res ipsa loquitur* did not apply because the City did not have exclusive control over the water meter lid, which was located on a public sidewalk.

Hansen appealed to this Court, arguing that a jury should decide whether the City had been negligent in failing to secure the water meter lid.

---

1. The record does not disclose either that Hansen filed a notice of tort claim under the Idaho Tort Claims Act or that the City asserted a sovereign immunity defense.

## II.

■ When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion. *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005) (citation omitted). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). If there is no genuine issue of material fact, "only a question of law remains, over which this Court exercises free review." *Watson*, 141 Idaho at 504, 112 P.3d at 792.

### A.

■ In her complaint, Hansen alleged the City was liable to her under a theory of *res ipsa loquitur*. She cited *Le'Gall v. Lewis County*, 129 Idaho 182, 923 P.2d 427 (1996), in support of this claim. *Res ipsa loquitur* applies when "the agency or instrumentality causing the injury is under the exclusive control and management of the defendant, and the circumstances of the case are such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence." *Id.* at 187, 923 P.2d at 433 (quoting *Jerome Thriftway Drug, Inc. v. Winslow*, 110 Idaho 615, 618, 717 P.2d 1033, 1036 (1986)). The burden shifts to the defendant in such instances to rebut an inference of negligence.

The district court correctly declined to apply *res ipsa loquitur*. The water meter lid was not under the exclusive control of the City; it was located on a public sidewalk. Further, the evidence disclosed that water meter lids can be readily removed by passersby. Thus, *res ipsa loquitur* does not apply.

2. *Pearson v. Boise City*, 80 Idaho 494, 497, 333 P.2d 998, 999 (1959), holds that "Municipalities are charged with the duty of keeping streets in reasonably safe condition for public travel and are liable for damages for injuries sustained in consequence of their negligent discharge of such

### B.

■ In her complaint, Hansen alleged the City was negligent in replacing the water meter lid. In order to establish negligence, the plaintiff must assert: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brooks v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1995) (citing *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980)). The propriety of summary judgment must begin with an evaluation of duty. *Brooks*, 127 Idaho at 489, 903 P.2d at 78. The question of whether a duty exists is a question of law over which this Court exercises free review. *Udy v. Custer County*, 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001).

### i.

■ Although the parties generally concur that the City had a duty of care with regard to its sidewalk, there is disagreement as to the source and nature of the duty. The City contends that this is a premises liability case, requiring the court to consider whether Hansen was a licensee or invitee. Hansen contends that this is not a premises liability situation but that the City owed Hansen a general duty to exercise reasonable care in securing the water meter lid. The district court based its grant of summary judgment in favor of the City primarily on the premises liability theory but secondarily on the theory advanced by Hansen.

The premises liability analysis is not apposite to this case. Nor is it appropriate for consideration under another line of cases cited by the district court, pertaining to the duty of a municipality to exercise reasonable care to maintain its streets and sidewalks in a reasonably safe condition.[2] This case does not involve a defect in the sidewalk but, rather, involves the question of whether the

duty." *Pearson* involved a pedestrian's slip and fall on a city sidewalk and the Court clearly intended its quote to apply to sidewalks. However, cities are not strictly liable for injuries on sidewalks. *Id.*

City was negligent in failing to properly replace or secure the lid of the water meter box. This involves a different duty.

 Here, the City was the operator of a water utility and, in that capacity, was responsible for maintaining the water works, including the water meters, in a reasonably safe condition. A city acts in a proprietary capacity when it owns, maintains, and operates a water system for the benefit of its inhabitants. *Skaggs Drug Centers v. City of Idaho Falls,* 90 Idaho 1, 7, 407 P.2d 695, 697 (1965) (citing *Gilbert v. Village of Bancroft,* 80 Idaho 186, 327 P.2d 378 (1958); *Hooton v. City of Burley,* 70 Idaho 369, 219 P.2d 651 (1950)). Thus, a city is subject to liability for damages arising out of its negligence under the same rules as are applied to private individuals or corporations. *Skaggs,* 90 Idaho at 7, 407 P.2d at 697; *see also Splinter v. City of Nampa,* 70 Idaho 287, 292, 215 P.2d 999, 1002 (1950) (cities under same obligations and liabilities and owe same duty as private owner when engaged in proprietary function); *Hooton,* 70 Idaho at 377, 219 P.2d at 656 (1950) (when city engaged in private industry, city must of necessity assume the same duties, responsibilities, and liabilities on account of negligence as are imposed on private owners); *C.C. Anderson Stores Co. v. Boise Water Corp.,* 84 Idaho 355, 359, 372 P.2d 752, 754 (1962) (a city "is not an insurer against injury to others arising out of the installation, maintenance or operation of its water system. Its liability for such injury depends upon negligence.") Thus, the City had "a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by [it], and to do [its] work, render services, or use [its] property as to avoid such injury." *Sharp v. W.H. Moore, Inc.,* 118 Idaho 297, 300, 796 P.2d 506, 509 (1990) (quoting *Whitt v. Jarnagin,* 91 Idaho 181, 188, 418 P.2d 278, 285 (1966)).

### ii.

 Since the City had a duty to use reasonable care in relation to the water meter and its lid, the question is whether the City breached its duty by failing to properly secure the lid on September 1, 2004. Despite a spirited and candid presentation by Hansen's counsel at oral argument, we fail to discern any evidence to establish a factual dispute on the question of negligence.

 In its motion for summary judgment, the City produced the affidavits of two City employees. One was that of Brian Johnson, who checked the lid on September 1, 2004. Johnson detailed the procedure he used when checking the lids, and stated that he did not write down any problems with the lid at that time. Johnson did not state that he had a specific memory of securing the water meter lid on that date and if the problem with the water meter lid was merely a question of an ill-fitting or missing bolt, as Hansen alleged in her complaint, Johnson would not have been required to generate a report pursuant to the City's Protocols. However, the only evidence produced by either party on this issue was Johnson's testimony about his normal practices, which included resetting and securing the lid by turning the locking bolt. "Evidence of the routine practice of an organization is relevant to prove that the conduct of the organization on a particular occasion was in conformity with that routine practice." *Gillingham Const., Inc. v. Newby–Wiggins Const., Inc.,* 136 Idaho 887, 893, 42 P.3d 680, 686 (2002) (citing Idaho R. Evid. 406).

The City also produced an affidavit from Mike McCarty, a City of Pocatello employee who supervises water meter readers. McCarty explained the structure of the water meter holes. The water meter lids are essentially identical to a manhole cover. They sit within a metal frame that is recessed into the sidewalk. The cover has a locking bolt on the base that locks the lid to the frame. McCarty explained a water meter lid could not flip up, as it did in this case, unless it was sitting askew on the frame—even if the locking bolt was not in place. Thus, Johnson would have had to leave the lid askew on the frame, which would have been noticeable to passersby. McCarty noted that he could not find any utility or service records indicating a problem with the lid, nor could he find record of any citizen complaint about the water meter lid. He stated that it is possible for third persons to get into the water meter by removing the lid.

Hansen had the obligation of showing that her injuries were caused by the negligence of

the City. Under the facts of this case, she would be required to prove that the city employee negligently left the lid of the water meter askew when he read the water meter nine days before her accident. Although there was no direct evidence that he did so, Hansen argues that the happening of the accident itself gives rise to an inference that he left it askew. Another explanation is that someone else left the lid askew, since the water meter was located on a public sidewalk and its lid was not difficult to remove. Hansen cannot point to any evidence indicating that one explanation is more plausible than the other. Because Hansen presented no evidence that would remove this issue from the realm of speculation, we conclude that the district court properly granted summary judgment.

### III.

The district court's order granting summary judgment to the City of Pocatello is affirmed. Costs to the City.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

